United States District Court
For the Northern District of California

1
2
3
4
5
6                           UNITED STATES DISTRICT COURT

7                           NORTHERN DISTRICT OF CALIFORNIA

8
9
10
11   MICHAEL W. PUTKOWSKI, et al.,

12            Plaintiffs,                        No. C 05-3289 PJH

13       v.                                      **ORDER GRANTING MOTION
                                                 TO DISMISS**
14   IRWIN HOME EQUITY
     CORPORATION, et al.,
15
              Defendants.
16   _____/

17        Defendants' motion to dismiss the second amended complaint came on for hearing

18   before this court on February 8, 2006.  Plaintiffs appeared by their counsel Kathleen Clark

19   Knight and Gail Killefer, and defendants appeared by their counsel Virginia W. Barnhart.

20   Having read the parties' papers and carefully considered their arguments and the relevant

21   legal authority, and good cause appearing, the court hereby GRANTS the motions as

22   follows and for the reasons stated at the hearing.

23                                    **INTRODUCTION**

24        This is a proposed class action alleging violations of the Fair Credit Reporting Act,

25   15 U.S.C. § 1681, et seq. ("FCRA").  Plaintiffs Michael W. Putkowski ("Putkowski") and

26   Nikki Childress ("Childress") filed this action on August 12, 2005, against defendants Irwin

27   Home Equity Corporation and Irwin Union Bank and Trust Company ("Irwin").  Plaintiffs

28   filed the second amended complaint ("SAC") on December 23, 2005.

In the SAC, plaintiffs allege violations of two sections of the FCRA, and seek statutory and punitive damages, and declaratory and injunctive relief.  Irwin now moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Irwin also argues that it is entitled to judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

**BACKGROUND**

Under the FCRA, consumer agencies are authorized to furnish consumer reports[1] only for certain "permissible purposes."  One such purpose is the use of the information "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer."  15 U.S.C. § 1681b(a)(3).  If the credit transaction is not initiated by the consumer, the consumer agency is further restricted, and may issue a credit report only if, among other things, "the transaction consists of a firm offer of credit . . . ."  See 15 U.S.C. § 1681b(c)(1)(B)(i), § 1681b(f).  A "firm offer of credit" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based upon information in a consumer report on the consumer, to meet specific criteria used to select the consumer for the offer  . . ."  15 U.S.C. § 1681a(1).

In addition, any person who uses a consumer report on any consumer in connection with a credit transaction that is not initiated by the consumer is required to disclose to the consumer that: (1) consumer credit reports were used to determine who should receive the credit offer; (2) the consumer was selected because she satisfied certain criteria; (3) if the

_____

[1]  A consumer report is

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for –

    (A)    credit or insurance to be used primarily for personal, family, or household purposes . . .

15 U.S.C. § 1681a(d)(1).

United States District Court
For the Northern District of California

1  consumer does not continue to meet the criteria for a finding of creditworthiness or fails to

2  provide the required collateral, then the offer may not be extended; (4) the consumer may

3  opt out of future credit offers by prohibiting the unsolicited use of information contained in

4  her credit file; and (5) the consumer may exercise that right by calling a given toll-free

5  number or by contacting the credit agency at a stated address.  See 15 U.S.C. 1681m(d).

6  The above information must be "presented in such format and in such type size and

7  manner as to be simple and easy to understand."  Id.

8        Plaintiffs assert that Irwin obtained a consumer report on Putkowski on May 5, 2005,

9  that Putkowski did not initiate any transactions related to that consumer report, that

10 Putkowski did not authorize the consumer reporting agency from which Irwin obtained the

11 report to supply the consumer report to Irwin, and that Irwin obtained the consumer report

12 without Putkowski's consent or knowledge.  Plaintiffs claim that after Irwin obtained the

13 consumer report, it mailed Putkowski one of Irwin's standardized written solicitations for a

14 home equity line of credit.  A copy of the mailer sent to Putkowski is attached to the SAC as

15 Exhibit B.

16       The mailer offered "a revolving line of credit secured by owner-occupied, single

17 family residences."  The mailer provided, in relevant part,

18       Lines [of credit] range from $15,000 to $300,000.  Annual Percentage Rates
         (APRs) are variable and as of March 1, 2005, ranged from 5.65% to 16.9%.
19       Your APR will be determined by the particular circumstances of your initial
         advance, property location and type, credit history, loan-to-value ratio and any
20       rate reduction options that you select.  APRs are subject to change and may
         not be available at commitment or closing.  This account has a 20-year term.
21       Customers are able to draw on their lines for the first 10 years of their
         account and minimum monthly payments are interest-only.  During the
22       second 10 years, customers repay their accounts by making amortizing
         payments of principal and interest.  You cannot draw on the loan at this time.
23
         APRs are calculated by adding a margin to the highest Prime Rate published
24       in the "Money Rates" section of The Wall Street Journal.  The maximum APR
         will be the lesser of 24% or 8% above your initial APR.
25
         . . . . The minimum line amount is $15,000; the amount and terms of your line
26       will be based on a review of the information you provide us.  You and/or your
         co-borrower may not receive this line or the interest rates quoted if you do not
27       currently meet the selection criteria used or our credit, equity and collateral
         requirements, or do not respond by the expiration date.
28

United States District Court

For the Northern District of California

1    Plaintiffs claim that the solicitation to Putkowski was a "sales pitch" inviting him to

2   apply for a loan, but assert that it was not a "firm offer of credit" because it did not provide

3   the terms of a credit transaction.  Specifically, plaintiffs contend that while the solicitation

4   indicates that Irwin's interest rates have ranged from 5.56 per cent to 16.9 per cent, it does

5   not state the precise rate of interest to be charged.  Plaintiffs also assert that while the

6   solicitation indicates a range of $15,000 to $300,000 for the amount of credit to be

7   extended, it does not state the precise amount.  Plaintiffs allege that the absence of the

8   amount of credit to be extended and the rate of interest to be charged prevent the

9   solicitation from constituting a firm offer of credit.

10    Plaintiffs also claim that Irwin obtained a consumer report on Childress in August

11   2003, that Childress did not initiate any transactions related to that consumer report, that

12   Childress did not authorize the consumer reporting agency from which Irwin obtained the

13   report to supply the consumer report to Irwin, and that Irwin obtained the consumer report

14   without Childress' consent or knowledge.  Plaintiffs assert, on information and belief, that

15   after Irwin obtained the consumer report on Childress, Irwin mailed Childress one of Irwin's

16   standardized written solicitations, "either substantially in the form attached as Exhibit A or in

17   another form used by Irwin which does not include the essential terms of a credit

18   transaction."[2]

19    Plaintiffs claim that the solicitation sent to Childress was a "sales pitch" inviting

20   Childress to apply for a loan, but assert that because the mailer failed to state the rate of

21   interest to be charged or the amount of credit to be extended, the solicitation did not

22   constitute a firm offer of credit.

23    Plaintiffs assert violations of two sections of the FCRA – 15 U.S.C. § 1681b(c) and

24   § 1681m(d).  Plaintiffs raise these claims in their individual capacities and also as proposed

25   representatives of a putative class of similarly situated individuals who allegedly received

26   an offer of credit from Irwin.

27   _____

28      [2]  The SAC describes the mailer attached as Exhibit A as "[a]n exemplar of one of
     Irwin's standardized written solicitations."

United States District Court

For the Northern District of California

1    Plaintiffs assert that Irwin violated § 1681b(c) by obtaining credit information without

2    a "permissible purpose" ("the permissible purpose claim").  Plaintiffs seek a judicial

3    declaration of the rights of the parties regarding Irwin's obligation to make firm offers of

4    credit to individuals whose consumer reports were obtained by Irwin in connection with

5    credit transactions not initiated by those individuals, and a declaration as to whether such

6    practice violates the FCRA, as well as an order enjoining Irwin from obtaining consumer

7    reports on individuals in connection with credit transactions not initiated by those

8    individuals, and then failing to make a firm offer of credit to such individuals.

9    Plaintiffs allege that Irwin violated § 1681m(d) by failing to include the disclosures

10    mandated by that subsection ("the disclosure claim"), and that Irwin has engaged in a

11    policy and practice of failing to make such disclosures.  Plaintiffs seek a judicial declaration

12    of the rights of the parties regarding Irwin's obligation to provide clear and conspicuous

13    disclosures when making a written solicitation in connection with a credit transaction not

14    initiated by the individual after obtaining a credit report on such individual, as well as an

15    order enjoining Irwin from failing to provide such clear and conspicuous disclosures.

16    Irwin argues that the SAC should be dismissed under Rule 12(b)(6) for failure to

17    state a claim as to both Putkowski and Childress, and because declaratory and injunctive

18    relief is not available to private litigants under the FCRA.  Irwin submits that all the claims

19    should be dismissed without leave to amend.

**DISCUSSION**

21    A.    Legal Standards

22    A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

23    state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in

24    support of the claim which would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S.

25    41, 45-46 (1957); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994).

26    Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

27    Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  All allegations of material fact are

28    taken as true and construed in the light most favorable to the nonmoving party.  Smith v.

**United States District Court**

For the Northern District of California

1    <u>Jackson</u>, 84 F.3d 1213, 1217 (9th Cir. 1996).

2         Motions to dismiss for failure to state a claim are disfavored, <u>see</u> <u>Gilligan v. Jamco</u>

3    <u>Dev. Corp.</u>, 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in

4    "extraordinary" cases.  <u>See</u> <u>United States v. City of Redwood City</u>, 640 F.2d 963, 966 (9th

5    Cir. 1981).  In dismissing for failure to state a claim, "a district court should grant leave to

6    amend even if no request to amend the pleadings was made, unless it determines that the

7    pleading could not possibly be cured by the allegation of other facts."  <u>Doe v. United States</u>,

8    58 F.3d 494, 497 (9th Cir. 1995) (citations omitted).

9    B.    Defendants' Motion

10        1.    Permissible Purpose Claim

11        Irwin argues that plaintiffs cannot state a claim for obtaining consumer information

12   without a permissible purpose, because the Irwin mailers set forth a firm offer of credit, and

13   it is permissible under the FCRA to obtain consumer information for the purpose of making

14   a firm offer of credit.  Because the SAC alleges that Childress received a mailer <u>either</u>

15   substantially in the form attached as Exhibit A <u>or</u> in another form which they do not identify,

16   the court finds that plaintiffs have not alleged that Childress received a specific mailer.

17   Thus, it is not possible for the court to consider whether the mailer that Childress allegedly

18   received made a firm offer of credit.

19        Irwin contends that the mailer Putkowski is alleged to have received sets forth a pre-

20   approved offer for a secured home equity line of credit within the meaning of the FCRA.

21   Irwin contends that the offer included the following terms:  a) a line of credit in the minimum

22   amount of $15,000, and up to $300,000; b) a 1% cash balance bonus on balance transfers;

23   c) payment options including the option of choosing the interest-only payment or the full

24   balance or anything in between, for the first ten years; c) the option to pay down the

25   principal and re-use the credit line; d) no opening fees (no application fee, no processing

26   fee, no appraisal fee, no points); e) the ability to obtain a loan for up to 100% of the value of

27   the applicant's home, less the amount of any first mortgage; f) the option of obtaining a

28   lower monthly payment or lower interest rate by choosing a line with points and/or opening

6

United States District Court

For the Northern District of California

1   fees; and g) variable interest rates, not to exceed the lesser of 24%, or 8% above the initial

2   rate.

3          Irwin contends that the FCRA and relevant case law establish that a "firm offer of

4   credit" may in fact be conditional in many respects, and that the offer need not contain the

5   precise interest rate or the exact amount of credit that a borrower may later qualify for.

6   Irwin asserts in addition that the legislative history of the FCRA affirms Congress' intent that

7   an offer of credit may be conditional, and that the offeror may later withdraw the offer if the

8   consumer does not meet the creditworthiness criteria.

9          Thus, Irwin asserts, the mailer at issue satisfies the requirements of the FCRA,

10  because it states that the recipient was pre-approved for a home equity line of between

11  $15,000 and $300,000, and it specifies all the material terms of the offer, including the term

12  of the loan, the maximum interest rate, the applicable fees, the amortization and collateral

13  requirements, the payment options, the insurance requirements, and the underwriting

14  standards.

15         In opposition, plaintiffs argue that Irwin did not make a "firm offer of credit," and that

16  the act of obtaining plaintiffs' consumer information was therefore not for any permissible

17  purpose.  Plaintiffs claim that the FCRA does not define the separate terms "offer" and

18  "firm."  Thus, plaintiffs argue, the court should look at the common and ordinary meaning of

19  "offer" as reflected in the dictionary definitions and in the definition in the Restatement of

20  Contracts – meaning generally, a manifestation of willingness to enter into a contract – and

21  should look at the dictionary definition of "firm" – meaning "not subject to change, revision,

22  or withdrawal."

23         Plaintiffs submit that a statement of material terms that includes a loan amount

24  ranging from $15,000 to $300,000, and an interest rate ranging from 5.65% to 24%, is not

25  sufficiently definite to constitute an offer because it is not enforceable.  Plaintiffs claim that

26  such a statement is nothing more than a sales pitch designed to persuade consumers to

27  apply for a home equity line of credit.

28         Plaintiffs rely on Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), in which the

United States District Court

For the Northern District of California

1   Seventh Circuit considered whether a promotional flyer constituted a "firm offer of credit"

2   under the FCRA.  The promotional flyer stated that the recipient was pre-approved to

3   participate in an exclusive offer, making her eligible to receive a Visa or MasterCard with

4   limits up to $2000 and credit towards an auto loan in an amount up to $19,500.  Id. at 722.

5   The offer guaranteed a minimum of $300 in auto credit, stated that interest rates might vary

6   from 2.9 to 24.9%, but contained no information on how interest would be compounded or

7   terms of repayment.  Id. at 723.

8       The Seventh Circuit stated that in considering whether an offer is a firm offer of

9   credit under the FCRA a court "must consider the *entire* offer and the effect of *all* the

10  material conditions that comprise the credit product in question."  Id. at 728.  The court

11  found that the relatively small amount of credit guaranteed in the defendants' offer,

12  combined with the limitation that it must be used for a vehicle purchase, raised the question

13  whether the offer had "value" to the consumer.  Id.  The court further noted that the

14  absence of material terms from the offer, such as the precise interest rate, the method of

15  compounding interest, and the repayment period, rendered it impossible for a court to

16  determine from the pleadings whether the offer had value.  Id.  The court concluded that

17  the flyer did not extend a firm offer of credit, noting that "[t]he statutory scheme of the

18  FCRA makes clear that a 'firm offer' must have sufficient value for the consumer to justify

19  the absence of the statutory protection of his privacy."  Id. at 727.

20      Plaintiffs in the present case argue that the interest rate is a missing material term,

21  as it ranges from 5.65% to 24%, is "subject to change," and "may not be available," and

22  assert that the mailer therefore did not constitute a firm offer of credit.  Plaintiffs also

23  contend that the offered amount of the loan – $15,000 to $300,000 – ranges too widely to

24  constitute an offer, much less a "firm offer" under the FCRA.

25      The court finds that the mailer sets forth a "firm offer of credit," as defined in the

26  FCRA.  While it is technically true that the FCRA does not define the separate terms "offer"

27  and "firm," it does define "firm offer of credit."  See 15 U.S.C. § 1681b(a).  In addition, the

28  1997 amendments to the FCRA provide that a firm offer of credit may be conditioned on

8

one or more of the following:

(1)     The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established –

(A)     before selection of the consumer for the offer; and

(B)     for the purpose of determining whether to extend credit or insurance pursuant to the offer.

(2)     Verification

(A)     that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or

(B)     of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.

(3)     The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was –

(A)     established before selection of the consumer for the offer of credit or insurance; and

(B)     disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(l).

The text of the FCRA does not support plaintiffs' suggestion that a firm offer of credit cannot contain a range of credit or interest rates, or that it must be of sufficient "value" when judged by a later arbiter, as suggested by the Seventh Circuit in Cole.  There is also nothing in the FCRA that would prohibit a potential lender from indicating that a responding recipient may later obtain more favorable terms than the minimum terms presented in the mailer.  Here, the Irwin mailer offered a minimum 20-year, $15,000 line of credit, with a maximum interest rate of 24%.  The fact that the mailer also suggested that a recipient might  later receive a more favorable offer of credit does not violate the FCRA.

2.     Disclosure Claim

Irwin argues that the disclosure claim should be dismissed because the mailer

United States District Court

For the Northern District of California

1  clearly set forth the required disclosures, and because the FCRA does not provide a private

2  right of action for claims under § 1681m for failure to provide the mandated disclosures.

3      First, Irwin contends that the terms of the offer and the information required by

4  § 1681m(d) were clearly and conspicuously disclosed.  Plaintiffs maintain, however, that

5  the required disclosures do not appear in the letter Putkowski received[3] but rather appear

6  on the back of the brochure, buried in half-tone fine print.  They claim that while the letter

7  includes the notation, "See our enclosed brochure," the disclosures in the brochure are in

8  barely readable print, not in a different or larger typeface.

9      In its second argument, Irwin asserts that the disclosure claims (second, fourth, and

10  sixth causes of action) are barred as a matter of law, because there is no private right of

11  action for violation of the § 1681m(d) disclosure requirements.  The FCRA imposes civil

12  liability on any person who wilfully or negligently fails to comply with the requirements of the

13  FCRA.  15 U.S.C. §§ 1681n, 1681o.  In 2003, Congress enacted the Fair and Accurate

14  Transactions Act ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (2003), which amended

15  the FCRA to eliminate private rights of action for violations of § 1681m(d).  As amended by

16  FACTA, § 1681m now provides that "[s]ections 1681n and 1681o of this title shall not apply

17  to any failure by any person to comply with this section," and that "[t]his section shall be

18  enforced exclusively under section 1681s by the Federal agencies and officials identified in

19  this section."  15 U.S.C. § 1681m(h)(8).

20      In opposition, plaintiffs acknowledge that a number of district courts have recently

21  held that private individuals can no longer pursue claims for violation of § 1681m(d).

22  Nevertheless, plaintiffs argue that the court should look beyond the express language of

23  the statute because in plaintiffs' view the statutory language is ambiguous, and because a

24  literal interpretation would thwart the purpose of the overall statutory scheme or lead to an

25

26

27  _____

28      [3]  Plaintiffs apparently do not know which mailer Childress received, if any.  See SAC ¶ 56.

10

United States District Court

For the Northern District of California

1  absurd result.[4]  Specifically, plaintiffs claim that the statement in § 1681m(h)(8) that

2  "[s]ections 1681n and 1681o of this title shall not apply to any failure by any person to

3  comply with this <u>section</u>" is ambiguous because it is not clear whether "section" refers to all

4  of § 1681m or just to § 1681m(h).[5]

5       In reply, Irwin disputes the assertion that "section" doesn't really mean "section,"

6  pointing to a recent decision from the Northern District of California, <u>White v. E-Loan, Inc.</u>,

7  409 F.Supp. 2d 1183 (N.D. Cal. 2006), which analyzes this very issue.  In that case, the

8  district court noted that Congress follows a convention (based on the House Legislative

9  Counsel's Manual on Drafting Style and Senate Office of Legislative Counsel's Legislative

10 Drafting Manual) when it uses organizational terms in statutes, breaking down "section" into

11 subparts as follows: "subsections," "paragraphs," "subparagraphs," and "clauses." <u>Id.</u> at

12 1185 (citing <u>Koons Buick Pontiac GMC, Inc. v. Nigh</u>, 543 U.S. 50, 60 (2004)).

13       Irwin also disputes plaintiffs' assertion that a finding that § 1681m provides no

14 private right of action would leave consumers who do not receive sufficient disclosures

15 without any recourse, noting that § 1681m(h)(8) expressly provides that violations of

16 § 1681m may be enforced by the FTC, by Federal banking agencies, and by the National

17 Credit Union Administration.

18       As to Putkowski, the motion to dismiss the claims of failure to make clear and

19 conspicuous disclosures (the second, fourth, and sixth causes of action) is GRANTED.

20 While § 1681n and § 1681o of the FCRA generally establish a private right of action for

21 certain violations of the FCRA, § 1681m(h)(8) (added by FACTA) now expressly provides

22

23        [4] Plaintiffs also argue that the FACTA amendments, which became effective December
24  4, 2003, should not be applied retroactively.  However, the court need not address this
    argument, as the SAC alleges that Irwin did not obtain the consumer report on Putkowski until
25  May 2005, and his claim therefore did not accrue until after the effective date of FACTA.

26        [5] Plaintiffs submit that "[t]he placement of the term 'section' in a paragraph of a
    subsection gives rise to more than one possible meaning."  In support, they quote Reed
27  Dickerson, <u>The Fundamentals of Legal Drafting</u>, at 84 (2d ed. 1986), for the proposition that
    "'a satisfactorily arranged legal instrument is an ordered set of ordered sets in which there are
28  subsets to the order *n* and in which each subset expresses a principle less significant than that
    expressed by its parent set or subset.'"

United States District Court

For the Northern District of California

1    that there is no private right of action for violations of § 1681m.

2         It is clear from the text of the FCRA that "section" has a particular meaning within the

3    hierarchy of "section," "subsection," "paragraph," "subparagraph," and "clause."  The

4    "section" is designated by the number in the main heading, which follows the "§" sign.  The

5    subsections are designated by lower-case letters.  The paragraphs are designated by

6    arabic numerals.  The subparagraphs are designated by capital letters.  The clauses are

7    designated by lower-case roman numerals.  The court sees no need to contribute further

8    to the already extensive exegesis of § 1681m(h)(8).  See, e.g., Phillips v. New Century

9    Financial Corp., 2006 WL 517653 at *2-4 (C.D. Cal., March 1, 2006); White, 409 F.Supp.

10   2d at 1184-87; Stavroff v. Gurley Leep Dodge, Inc., 2006 WL 196381 at *2-5 (N.D. Ind.,

11   Jan. 20, 2006); Murray v. Cross Country Bank, 399 F.Supp. 2d 843, 844 (N.D. Ill. 2005);

12   Murray v. Household Bank, 386 F.Supp. 2d 993, 997-99 (N.D. Ill. 2005); Hernandez v.

13   Citifinancial Servs., Inc., 2005 WL 3430858 at *2-6 (N.D. Ill., Dec. 9, 2005).

14        3.     Claims as to Childress

15        Irwin argues that the claims as to Childress should be dismissed for two

16   reasons – they are time-barred, and they fail to state a claim.  An action to enforce liability

17   under the FCRA must be brought within the earlier of (a) two years after the date of

18   discovery by the plaintiff of the violation that provides the basis for such liability, or (b) five

19   years after the date on which the violation that is the basis for such liability occurs.  15

20   U.S.C. § 1681p.  In the SAC, plaintiffs allege that Irwin obtained a consumer report on

21   Childress in August of 2003, more than two years prior to the date that Childress was

22   joined as a plaintiff.[6]  Irwin contends that as Childress has not alleged facts showing that

23   she discovered that Irwin had obtained her consumer information fewer than two years

24   before she was joined in the action, her claims must be dismissed as untimely.

25        In opposition, plaintiffs argue Irwin accessed Childress' information without her

26   ────────────────────

27        [6] Putkowski was the sole named plaintiff in the original complaint, which was filed on
     August 12, 2005, and amended on October 4, 2005.  The parties then stipulated to the filing
28   of a second amended complaint, and the order permitting the filing of the SAC was issued on
     December 9, 2005.  Plaintiffs filed the SAC on December 23, 2005.

United States District Court

For the Northern District of California

1    knowledge sometime in August 2003, and the mailed solicitation came at some point

2    thereafter.  They assert that the filing of a complaint containing class action allegations tolls

3    the statute of limitations with respect to all purported class members.  Since the proposed

4    class action complaint was filed by Putkowski in August 2005, plaintiffs assert that the

5    statute of limitations for purported class members' claims was tolled beginning August

6    2005.

7           In reply, Irwin argues that the filing of Putkowski's complaint in August 2005 cannot

8    save Childress' disclosure claim where Putkowski himself had none.  Irwin asserts that

9    when Putkowski filed suit on August 12, 2005, he had no right to assert a private cause of

10   action for an alleged FACTA disclosure violation because that right was negated by the

11   FACTA amendments.  Thus, Irwin contends, the filing of the original complaint did not toll

12   the limitations period for Childress, because at the time of filing, Putkowski was an

13   inadequate class representative.

14          Irwin argues further that even if one assumes for the sake of argument that the filing

15   of the original complaint by Putkowski tolled the statute of limitations for other putative class

16   members who received the same mailer in the two years prior to suit, Childress still has no

17   valid claim because she did not allege that she received the mailer that is attached to the

18   SAC – or any other mailer – after August 12, 2003, and because her efforts to assert

19   disclosure claims on behalf of a class are barred by the FACTA amendments.

20          Irwin also argues that the allegations regarding Childress are too vague to state a

21   claim.  The SAC alleges that Childress received a mailer from Irwin, at some unspecified

22   time – a mailer that was either "substantially similar" in form to one of the mailers attached

23   to the SAC or was in "some other form."  The SAC therefore says nothing specific about

24   the disclosures made in the mailer sent to Childress or why those disclosures are not

25   sufficient under the FCRA.  Irwin contends that because plaintiffs are unable to state any

26   facts regarding the alleged solicitation, the claims as to Childress are too vague and

27   conclusory to state a claim under the FCRA.

28          In opposition, plaintiffs argue that they have alleged facts sufficient to put Irwin on

United States District Court

For the Northern District of California

1  notice of the claims asserted.  They contend that it is undisputed that Irwin accessed

2  Childress' consumer information without her knowledge and consent, and that Irwin must

3  therefore have an enumerated permissible purpose under § 1681b.  They assert that either

4  Irwin did not send a solicitation to Childress, and thus had no permissible purpose, or Irwin

5  sent a solicitation to Childress in the same or similar form as the mailer sent to Putkowski,

6  which did not contain a firm offer of credit, or Irwin sent a solicitation to Childress in the

7  same or similar form as the mailer sent to Putkowski, which contained a firm offer of credit

8  but did not contain adequate disclosures.[7]

9       In reply, Irwin asserts that Childress fails to allege facts which, if true, support a

10 cognizable claim for relief under the FCRA.  Irwin claims that because Childress cannot

11 allege what mailer she received or when she received it, she cannot simultaneously allege

12 that Irwin did not send her a "firm offer of credit" or failed to make "clear and conspicuous"

13 disclosures.  Irwin notes that Childress claims that her credit file was accessed in 2003, and

14 then speculates that Irwin sent her a mailer similar to the one that Putkowski allegedly

15 received some two years later – in 2005 – or possibly sent her a mailer similar to another

16 copy of a "standardized" Irwin mailer attached to the SAC.  Irwin contends that the court

17 cannot properly infer any facts to support the claims made by Childress by reading the

18 mailer that Putkowski allegedly received, because Childress has simply guessed that Irwin

19 sent her a mailer that "may have" indicated a range of interest rates and "may have"

20 included substantial ranges of credit to be extended.  Irwin argues that Childress cannot

21 state a claim for relief by simply guessing.

22      The court finds that the motion must be GRANTED, because plaintiffs cannot say

23 what mailer Childress received (and there is therefore no way to determine whether she did

24 or did not receive a firm offer of credit), and because the disclosure claim is time-barred.  At

25 the time Putkowski filed suit, he was barred from bringing the § 1681m(d) claim because

26

27     [7] A fourth possibility, not mentioned by plaintiffs, is that Irwin sent Childress some other
28 type of mailer, with a different (unspecified) offer of credit and different (unspecified)
   disclosures.

United States District Court
For the Northern District of California

1   FACTA had eliminated the private right of action for such suits.  Thus, he cannot be an

2   adequate class representative as to the § 1681m(d) claim, and the claim must be

3   dismissed.  See Lierboe v. State Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022 (9th Cir.

4   2003).

5          It is generally true that the filing of a class action tolls the running of the statute for all

6   members of the class who seek to intervene as plaintiffs in a continuing action, even where

7   the court has found the action inappropriate for class action status.  See Catholic Soc.

8   Serv., Inc. v. I.N.S., 232 F.3d 1139, 1146-47 (9th Cir. 2000).  However, at the time that

9   plaintiffs joined Childress to the present suit, there was no viable claim under § 1681m(d).

10  Thus, there was nothing to toll.

11                                            **CONCLUSION**

12         In accordance with the foregoing, the court GRANTS the motion to dismiss.  The

13  dismissal is WITH PREJUDICE.  Plaintiffs cannot state a claim as to Childress, because

14  they cannot say what mailer she received, and because her disclosure claim is time-barred.

15  Putkowski's claim under § 1681b fails because the mailer he received did extend a firm

16  offer of credit, and his claim under § 1681m fails because there is no private right of action

17  under that section.  Because the SAC must be dismissed, the court does not address the

18  argument with regard to declaratory and injunctive relief.

19

20  **IT IS SO ORDERED.**

21  Dated:  March 23, 2006

22                                              _____
                                                PHYLLIS J. HAMILTON
23                                              United States District Judge

24

25

26

27

28

                                                    15